The case this morning is Green Edge v. Rubber Mulch Mr. Jacobson? Yes, your honor. Joe Jacobson. Of my 15 minutes, I will be taking 5, reserving 5, and per court's order, giving 5 to International Mulch. Okay. Thank you. You may proceed. Thank you, your honor. Good morning, your honors. This is an appeal from a grant of summary judgment in a patent case where the district court found the patent to be invalidated for failure to disclose the best method in the disclosure of the patent application. The court erred for a number of reasons, factual disputes, and misreading of the patent application. The patent application disclosed the best mode to be a water-based acrylic colorant, such as Vizichrome, manufactured by Futura. But even if you're right, aren't there serious prior art issues that the court didn't decide? And shouldn't we send it back for review on anticipation and obviousness? Yes, your honor. It should be sent back for review on those issues. There are factual disputes about the prior art, and the court, on the first round of summary judgments, denied summary judgment because of those factual disputes and because of the uncollaborated nature of some of the affidavits that were submitted. But it certainly is something that's to be decided by effect. I totally agree, your honor. On the Futura issue about the Vizichrome, the record establishes that Futura itself told GreenEdge in a letter dated shortly before, two months before the application. Yes, it was, your honor. It was part of the application. It said that was the name. In our brief on page 12, we follow an affidavit that was submitted by the plant manager for Futura, a former plant manager, and I want to correct a little bit. The plant manager's affidavit states that in 1998, when the company was acquired, this is at appendix 220, that the company stopped making this coating, and they no longer had the formula. But elsewhere in the record, pages 303 to 305, it's apparent that as late as 2002, Futura, in fact, was still manufacturing this product, was still supplying it to International Mulch and GreenEdge. And that there was International Mulch's unhappiness with the quality product that caused them to go to Poly 1, another supplier. And if you look at the record from 303 to 305, it makes it pretty clear that from the time that International Mulch went to Poly 1 until Poly 1 was ready to supply this, it was about a month. So it only took a month for a replacement supplier to come in. That would suggest that disclosures in the patent were sufficient. Because it's clear that Futura never told GreenEdge or International Mulch how they made the coating. So the only thing that Poly 1, the successor supplier, had was the patent description. Counsel, let me get back to Pryor out again. Yes, Your Honor. You seem to be comfortable with the idea of having the district court consider anticipation and obviousness. Yes, Your Honor. But isn't that something we can decide because there are really no genuine issues? Jakob Eysen and Byrne disclosed rubber pieces with colorants for mulch or ground cover. Isn't that basically the invention? And why should we send it back to sort of churn the system? Why isn't it clear that the invention is invalid? The items that I think would need to be sent back were the claims of these unpatented Pryor arcs that were made out there, which for a wide variety of reasons we think the evidence is poor. Jakob Eysen is very different from our patent. That was in fact not known to our inventors when they submitted it, so it wasn't part of the application. Byrne was known, was submitted, and the patent office found that Byrne did not anticipate this patent. Jakob Eysen involves very small particles, not mulch-like, that were heated. There's no heating involved in our process because heating changes the appearance of the rubber. They're heated. They're dropped through a chute and sprayed with colorant, a method which is highly inefficient and uneconomical, which would not yield a product that one could sell competitively with natural mulch because of the vast quantities of spray required to coat. It was a very inefficient, uneconomical process, and the end product did not look like natural mulch. But this isn't a process claim. No, Your Honor. This is a product claim. Correct, Your Honor. It's a claim of two things, plurality of rubber particles and in water-based acrylic colorant. And Byrne pretty much discloses the same thing. Well, Your Honor, Byrne is a product that is like a mat. The similarity between a Byrne product and the GreenEdge product is the similarity between AstroTurf and a blade of grass. You may run on both of them, but they are very, very different products and one does not anticipate the other in a sense. The Byrne product required the glue particles to be glued together, compressed, form a mat. Forty percent of the weight is binder and the coating to hold it all together. There's no need for it to look like anything like natural mulch that's laying out there loose, etc., being used that way. The jacobicin are very small particles. They look more like hay than like natural mulch. They are sprayed with colorant and they're heated. Heated is not something that is done with our product. In fact, it seems doubtful based on the science of these products that it can be done because it's a vulcanized rubber. It's a rubber that's designed not to become tacky when heated. And yet the claim in jacobicin is that they heat it to make it tacky. So it's a question whether that patent can even be done. I say I have 26 seconds over, so I'll stop the time. Okay, thank you, Mr. Jacobson and Mr. Foster. Ron Foster on behalf of Rubber Mulch and Rubber Resources. Your Honor, you're absolutely correct with regard to the prior art. There's no questions of fact with regard to jacobicin. It was prior art. I take exception with Mr. Jacobson's characterization of the jacobicin patent. As a matter of fact, his partner, Mr. Press, came down and took the deposition of my client, Dale Hawker, in Florida. And after the deposition, they had made arrangements to go inspect my client's facility. My client, without the help of an attorney, was the first one to actually identify the jacobicin patent with regard to all the parties involved here. But the Best Mode holding was wrong, wasn't it? Your Honor, it's not. They disclosed the best they knew. No, Your Honor, they did not. The only thing they ever used with regard to Best Mode was the Futura coating. Mr. Greenberg specifically stated the only colorant that he knew that would successfully work, supposedly it took two years to develop this coating, the only one that would work was the Futura coating. And the only thing that the parties knew when they ordered that was the designation 24009, Futura's coating number. It's true that Mr. Jarbo, the vice president of sales, sent a letter describing the word visichrome, and that was forwarded to Mr. Greenberg's patent. But what didn't they disclose that they knew to be better? They knew the proper designation of the Futura coating. In other words, to disclose this, they had to get 24009 into the record somehow? They not only needed to do that, at the very least... But why would they need to do that? They identified the Best Mode that they knew of. By name, by corporation, by place where you could acquire it. What more did they need to do? The evidence is undisputed that visichrome was not the name of the coating that was used to color rubber mulch. It was a method of combining to an epoxy coating. But that wasn't their fault. You can raise an enablement issue, but Best Mode? Best Mode applies, not enablement, because Best Mode... There's no requirement, contrary to Mr. Jacobson's argument, for there to be an attention center. The only question is whether at the time of the patent application, there was a Best Mode that the inventors had determined that there was a Best Mode. That's undisputed. It was the Futura coating. And they disclosed? No, they didn't, Your Honor. They didn't do... But what didn't they disclose? They gave the corporation and the name that they knew, the name that they were given? No. The name that they knew, consistently, every time that they had ordered the material, it was 24009. They had never used the word visichrome in purchasing it. They received a letter. They weren't the real inventors. The reality is that the Futura people formulated the coating. It was proprietary. They have to get a proper name? One of skill and the art wouldn't be able to locate this with the designated location? The evidence is that the formulation has been lost. And the very purpose of disclosing, let me go back to a prior question that you posed. The disclosure, not only was the name necessary, but I would contend that the formulation was required. Oh, well, I thought you weren't going to say that. I mean, the question that the formulation has been lost is immaterial, right? The question of best mode has to be at the time of the application, correct? At the time of the application, that's the determination of what the best mode is. Right. The fact that the formulation has been lost is very relevant because I don't mean to... That strikes me as really peculiar because suppose that I have a patent. I applied for it in 1990. And it's for a lubricant. And one of the components is a sparkle type oil. It's a very special type oil made only by the Sparkle Company, which sadly goes out of business in 1995 after my patent issues. And there's no more Sparkle to be had anywhere. I haven't suddenly got a patent that's become invalid on the day that the Sparkle Company goes out of business, do I? This court has held that best mode, even if it's a trade secret, has to be disclosed in the specification. Yeah, but if I disclose Sparkle, and Sparkle can be obtained at every hardware store, and I give you the address of a hardware store where you can find it in my application, and 10 years later you can't find Sparkle anywhere, that doesn't invalidate the patent on the day that the last can of Sparkle disappears from the last hardware store, does it? But that's not the facts here. Well, but let's establish whether that's true or not because I thought you were saying, yes, that patent becomes invalid, and that seems highly unlikely to me. I believe in the law, typically, we do not allow monopolies. We allow a monopoly in patent law in return for teaching the public specific things about the practice and the use of the invention. One of those requirements is best mode. If the inventor has a best mode, there's an obligation, even if someone, and there's no dispute that in this instance it was considered a trade secret, there's an obligation in consideration for receiving the monopoly of the patent that you disclose the trade secret. What that prevents is exactly what took place here, that the inventors were able to maintain what may have been a super-improved type of coding. We'll never know because we've lost the formulation. But if that coding was so much better that it was actually novel, that it wasn't anticipated by the prior art, then there would have been an improvement to what was in the public domain about the creation of rubber mulch. That wasn't the case here. It was always proprietary. They maintained it being proprietary. The evidence is that only GreenEdge was going to be able to purchase it. The agreement that they had with Futura was that only GreenEdge would be able to purchase this formulation. No one else was going to be entitled to ever even purchase the coding. That was the arrangement. Mr. Foster, let me ask about trademarks. This case final, was the trademark infringement claim decided? The declaratory judgment was dismissed. There were underlying trademark claims by GreenEdge that were asserted against rubber mulch. The court dismissed several claims for basically considering that the parties had abandoned them. GreenEdge had claims for trademark infringement against rubber mulch. And I think a reasonable reading of the court's ruling on one of the judgments was that all the remaining claims had been dismissed. There was never anything decided one way or the other. GreenEdge never prosecuted the trademark claims against rubber mulch. And to be honest, I had trouble with that until I went back and looked at the judgment to find that. Didn't the court hold that there was a lack of standing on the part of the defendants with respect to the trademark claims? Yes. But weren't they sued? Yes. Doesn't that create standing to defend? Respectfully, Your Honor, you're preaching to the choir. That's exactly the argument that we made to the court below. And I've never had a situation where my client had been sued. We asserted a counterclaim for declaratory judgment. And the court found that there was no case or controversy. And that's exactly what the court did in fact find. So for that reason, I believe that the court was in error with regard to the trademark claim. Turning to the Lanham Act claim, the court clearly was erroneous with regard to the conclusion of law. The court found in its opinion that there was a requirement that the theory of damages be disclosed as well as the calculation of damages. And that Rule 26 required that. There's no such requirement in Rule 26. The judge picked that up from a ruling, and the case was 24-7. And as with most of the cases, in fact with all of the cases, there was a request for discovery, motions to compel, an order that had ordered the party to answer this interrogatory about theory of damages. And the court incorporated that into the requirement under Rule 26. In this case, there was four motions to compel. In all instances, they were against the Green Edge parties. There was never a motion to compel against rubber mulch or rubber resources. They were never in violation of any of the discovery issues until the court found on behalf of international mulch on the Rule 37 issue. I see my time has expired. Just one question. How does rubber resources have standing for declaratory judgment? Under the case law, there has to be a real controversy. The evidence is that rubber resources used the term rubber mulch in their advertising. Both Green Edge and international mulch contended- We're talking about declaratory judgment here, though. Yes. And there was no action taken against them by either Green Edge or international? That's true. So I'm trying to figure out the- I don't think there has to be. All there has to be is concrete steps taken towards- and there must be an actual controversy. Green Edge and international mulch both took the position that the term rubber mulch was confusingly similar to the rubberific mark. Rubber resources used the term rubber mulch in their advertising. And for that reason alone, since there was potential future- Describing the product. In fact, maybe it's the name of the product. I'm not sure. It may be beyond description. Well, at the very least, I contend that it's a descriptive mark, which the court had trouble with understanding the difference between describing a product and a descriptive mark as being one on the scale between a very unique mark and a descriptive mark. Your position, I take it, on this is they sued somebody else for the same thing, and therefore they presumably would be prepared to sue you. They clearly stated that their position was that the use of the term rubber mulch constituted infringement of their mark. So your position then, more broadly stated, is that any time somebody sues Party A for a particular course of conduct, then anybody else who's engaged in that conduct could get a declaratory judgment that the cause of action was invalid. I believe under MedImmune, that's the standard, yes. So anyone who has used the term rubber mulch can now bring an action anywhere in the country on declaratory judgment. I don't know that anywhere in the country would apply, but to the extent that there was use of the mark in a particular- If I've used the term rubber mulch in California, I can sue tomorrow. Declaratory judgment. Depending on how you were using the mark. Yes, Your Honor. I believe we'll hear next from Ms. Hochul. Good morning, Your Honor. As to the issue of the use of rubber mulch, the term, I think part of the dispute is that my client's concerns were the use of the term rubber mulch in a trademark sense, not in a description of the product on the packaging. More importantly, I think to the current appeal, is that I don't believe there was any evidence on the record at the time or before this court as to what rubber resources use of the terms rubber mulch may have been on any products or advertising. There is a declaration in the record from Dale Hawker, who is the president of rubber resources, that I believe states something to the effect of the rubber mulch appeared either on the packaging or the advertising, but there's no further evidence in the record of the use of the term rubber mulch. And my client's mark, just for the record, is rubberific. So I think as to rubber resources, there is no case or controversy. There was no sufficient immediacy. My clients had not sent any correspondence to rubber resources. The Green Edge plaintiff had not filed suit against rubber resources. In fact, at that point, Green Edge did not own the rubberific mark anymore and was prepared to dismiss its trademark claim, and that was of record with the court. With respect to rubber mulch, et cetera, the party, I don't believe this court has jurisdiction because I think those claims were dismissed far before this case came up on appeal when the rubber mulch parties came to the court and said through counsel that they were no longer interested in pursuing any of their claims, and all of their counsel withdrew, and they were no longer a party when this case was finally resolved and ready for appeal. Are you talking about the trade? You say rubber mulch has abandoned all of its trademark? Rubber mulch, et cetera. The declaratory judgment claim? The company is no longer in business, yes, Your Honor. And the record is clear that at some point after the counterclaims on the declaratory, excuse me, the judgment was entered, the order was entered on the counterclaims, dismissing the counterclaims, rubber mulch, et cetera, exited the case. So prior to the court ruling on the Lanham Act claims, or several months before we ever reached trial, rubber mulch, et cetera, exited the case. Counsel, I believe both Mr. Foster and other counsel for rubber mulch, et cetera, withdrew. And there was a, the court had asked for statements from all of the parties sort of as to status because he was hearing that some of the parties had gone out of business groundscape, another one of the parties in this lawsuit. And he asked for a status update as to all the parties. And the status update on behalf of rubber mulch, et cetera, was that they were no longer pursuing their claims. And that's briefed in our brief, Your Honor, and it's also in the docket report at the beginning of the appendix. As to the Lanham Act claims, I think, again, that this has been adequately briefed. It's an abuse of discretion standard as to whether or not the Rule 37 sanction of preventing rubber resources from presenting any damage as evidence at trial, that's subject to the abuse of discretion. And I believe that the record is clear that the rubber resources parties never fulfilled their burden of coming forth with their either theories or amounts of damages. And even at the time of the hearing, we're still confused as to whether they were seeking actual damages, disgorgement. They put a jury instruction in as seeking goodwill for the first time, and that had never been raised. No witnesses had been identified. With respect to best mode, I believe that the problem is that it is undisputed that the inventors here had a best mode. And that is the subjective part of the test. Did the inventors have a best mode? The facts indicate that the inventors' best mode was this 24009 coding. Did they conceal it? I don't think the evidence shows that they intentionally concealed it. I think that the evidence could be said to not show that. But I think that the court has been very clear that intent to conceal is not consistent, is not a requirement. Did they fail to disclose it? I think they failed to disclose it. And I think that that is the inquiry here. And I think, as Mr. Foster alluded to, when you have a proprietary formula and you aren't able to disclose for contractual reasons or whatever the formulation, and it is an integral part of every claim, every claim identifies this colorant, or every claim requires this colorant as an element of the claim, and it is what distinguished this from the prior art, because it is undisputed that there were other parties who were suing rubber, selling colored rubber mulch, and that's in the record as well. I see my time is up, Your Honor. Thank you, Ms. Hochul. Mr. Jacobson? Thank you, Your Honor. The inventors' best mode was the use of a waterborne acrylic colorant, not a particular brand or particular manufacturers of it. That was designated in their patent application when they used such as to describe it as an example. When Mr. Foster states that Greenberg testified that the Futura coating was the only coating he knew of that worked, that misstates the record. That is not what Mr. Greenberg said. Mr. Greenberg said, that's the one we used, and then when they had in 2002 a problem with Futura, he went over to Poly-1, and Poly-1 was able to supply him, based on nothing more than the patent description, with the identical substance from the functional sense that he had. It worked just fine. There were two expert witnesses whose statements were in the record, both saying that the patent description was sufficient, that one could make this product simply from the description of the patent, that it would not take any untoward experimentation. And Poly-1, in fact, was able to do it almost immediately. So it's not simply theoretically whether one can do it, but one in fact did do it. That's getting into enablement again, right? The line between enablement and best mode sometimes is a narrow line, but the testimony there in the depositions and so on was not that they thought that this one substance was the best mode, but this was simply an example of the type of substances that they wanted to use. Well, it's the only one specifically disclosed. Yes, it is. The most preferred water-based acrylic systems, such as systems sold under the name of Visichrome. Correct. I mean, that's got to be what was stated as the best mode. Well, I think the word such as has importance, but... The Visichrome thing is a total red herring, I take it. It had nothing to do with the particular product. I take it from the testimony of Mr. Jarbo, is that his name? Jarbo. It sounded like what he was saying, although it wasn't as clear to me as it might be to you. But correct me if I'm wrong, but it seems to me that he was saying that Visichrome is a process by which we establish the proper color. A uniform color. A uniform color. It's like a set of paint chips. Yes. I think he, in fact, referred to it. Yes. So it had absolutely nothing to do with the description of this product, right? Is that fair? That is fair. He said, I don't know why our vice president sales manager, in the letter to the inventors, and in his meetings with the inventors council, told them it was called Visichrome. So given that, how should we read the patent in search of a best mode? Should we simply strike out the word Visichrome on the two occasions in which it appears, or what? I think we need to look at the word such as and realize that this is simply a stating example. The statement in argument that the only people who could ever purchase this from Futura was GreenEdge was also incorrect. Mr. Foster's client, in fact, purchased the colorant from Futura with no information other than the information in the patent. I mean, they were his supplier as well. And I think that suggests… The colorant being, now, is it correct to say that the colorant would be identified by 24009?  The 24009, if I understand, was the number they used internally in their manufacturing facility, and then there would be a dash and a suffix indicating a particular color that was being used. And they had a dozen colors. But if I asked for 24009-S, I would get the water-based acrylic, the binder, and a color designated by S. Is that correct? It would all be mixed together in one barrel. Right, but it would be the particular combination that would adhere to the rubber. And the binder is… Again, Mr. Jarbo seemed to say that the binder is the trick to… That's where the challenge comes in. Well, the acrylic is the binder. The acrylic is the binder. Well, but not all acrylics will bind to rubber, I take it. Correct. Vulcanized rubber is designed by tire companies to be resistant to things… The trick is to find the particular substance that will bind. As Mr. Jarbo described in his testimony, he had plenty of compounds in the urethane family that he knew would do. He said, well, I thought acrylic was better. They wanted acrylic. But simply saying acrylic doesn't tell you that it binds, right? It simply tells you this is a class of substances, some subset of which will bind. Is that correct? That is correct. But as he also indicated in his testimony that based on his experience as a coating person, he knew immediately that there were several small groups of ones to try. He took about 20 different ones, sampled them, washed them, narrowed it down to a couple, tested those again, and he was done. And so the question, at least for enablement purposes, would be how difficult is that process based on the fact that you haven't revealed anything about the particular nature of the acrylic that points you in the direction of a binding acrylic, right? That would be the question of that. In the expert witness testimony, two of them said that they are enabled, that it would not require any undue experimentation, and we have the actual fact that probably one did it. For these reasons, I'm over my time. I would ask that reverse sent back to trial on the various validity issues. Thank you. Thank you, Mr. Jacobson. Mr. Foster, you have five minutes. Reading from the record, Mr. Moy deposing Mr. Greenberg. This is at the appendix 949. Question. As of October 1, 1997, which is the date that Pat was applied for, was the VisiChrome product of Futura the only suitable color in your experience for coloring shredded rubber to produce synthetic mulch? Answer. From my knowledge, that would be the case. Mr. Jacobson said your client obtained it. Is that correct? That's correct. It doesn't sound like it was either concealed or in any way inaccessible. Rubber mulch was a licensee of GreenEdge initially, and while rubber mulch was a licensee, part of that license required them to acquire the material through GreenEdge from Futura. The only time they were able to – So they didn't withhold it? They didn't conceal it? It was accessible to you and conceivably to anyone else who would have sought it. Respectfully no, Your Honor. The only way they bought it was – Where does the record say respectfully no? The rubber mulch people only purchased it through GreenEdge. GreenEdge was the only party that was able to acquire it. That's availability. What's wrong here? I'm missing the point. The point is that if you had read the – You yourself got it. How can you be complaining that you can't get it? Because the only way that my client purchased it was from GreenEdge. Not from Futura, but from GreenEdge. The license required, when rubber mulch was a licensee of GreenEdge, to purchase – You read that somehow into the best mode requirement of this court, that there's a licensee exception to the concealment requirement? There was no disclosure to rubber mulch about the formulation. There was no – All they knew was that when they received an invoice, it said 24009. I understand your argument. I understand what you perceive the best mode requirement to be. And once again, I think the prior art, specifically Jacobson, the point I was going to make earlier was that my client obtained the Jacobson patent and practiced the Jacobson patent. Mr. Jacobson's partner came down and took my client's deposition. Jacobson is a playground covering to protect kids who fall off swings, right? It's characterized as a ground covering. I've seen it when I took my kids to various playgrounds, I think. This little tiny looks like the size of eraser bits. Actually, in the market, the product is the same that's sold as mulch with one distinction. There's no – they make sure there's no metal in the product that's sold as a playground material versus if there's any metal from the steel belting from the tires being in the mulch. Now, the record, of course, isn't developed, so do we know there are particle size limits built into the claimed invention? Is there anything in the record that tells us what the Jacobson particle sizes are? Absolutely. You have the patents. There can be no dispute about fact in that the Jacobson patent is an issued patent. Ms. Hochul, in her briefing as well as mine, addressed that the Jacobson patent teaches a range of particles that fall within the range that are claimed by – Is there about a 3% to 10% weight of said rubber particles correlation with the acrylic colorant? I'm not sure what you're asking. Well, in the claimed invention, the amount of water-based acrylic colorant is in a 3% to 10% by weight of said rubber particles relationship. Is that relationship in Jacobson? I believe so, yes, Your Honor, because the colorant – You believe so? Yes, Your Honor. It sounds to me like we'll have to go back and find out if that's the fact, right? The patent discloses the combination, but you don't even have to reach that far. Under KSR, if the expected results are the same, we had proposed that at the very least, Jacobson in combination with Byrne makes the 514 patent obvious. Doesn't Byrne disclose 2% to 5% coloring agent? Yes, I think so. The examiner initially found Byrne to make obvious the 514 patent, and they avoided that by arguing that the binder in Byrne, because they took the material and compressed it into a mat, and as anybody that has a paintbrush, if you don't clean the paintbrush out, the particles will stick. Is there any evidence in the record of why one would combine Byrne with Jacobson? There doesn't need to be, Your Honor. Under KSR, there's no longer a teaching – There doesn't need to be? Excuse me, Your Honor. There doesn't need to be? No, Your Honor. There's no longer, contrary to Mr. Jacobson's argument, that there has to be a suggestion or teaching requirement in the prior art. This court in Leapfrog, adopting the ruling in KSR from, what, 2008, held that there's no longer a TSM test for combining prior art. But in any event, they're basically in the same field. Absolutely, Your Honor. They involve rubber particles as some sort of ground cover. They both describe – Please. I have a separate question. I wanted to tie down this question of rubber mulch's status vis-à-vis the declaratory judgment relief request. Yes, Your Honor. Your opposing counsel suggests that rubber mulch has abandoned that request. Is that right? The request for? Declaratory relief on the trademark. No, Your Honor. The court entered a final judgment with regard to the declaratory judgment. There were both claims and counterclaims remaining after that. Greenidge had several claims against rubber mulch, and rubber mulch had certain counterclaims regarding those claims. The judge entered, pursuant to international mulch's motion for summary judgment, to dismiss the declaratory judgment action. That judgment was entered, but there were remaining issues, specifically the Lanham Act claim of rubber resources. The court, in just a general order, kind of, I think, maybe trying to clean up the room. You're addressing the finality question, I think. I was really intending – maybe you were addressing my question, but to be more specific about what I'm looking for is, your opposing counsel said, well, all right, rubberific – not rubberific – rubber resources still has declaratory judgment, but that's no good because there was no threat against – no suit ever brought by anybody against rubber resources. That's correct. Rubber mulch has given up. It's abandoned the field with respect to this issue. Now, what I wanted you specifically to address is, is that right or not? No, I don't believe so, Your Honor, because the judgment had already been entered with regard to the declaratory judgment action, and then the rubber mulch, the counsel, including myself, withdrew from the case and the court dismissed without prejudice. Well, when you say you withdrew from the case, just to make sure that I understand exactly where we are, because we have to decide this question among others, and the way your opposing counsel left it is we would simply say, well, rubber resources – I'm sorry, rubber mulch is out of the case, but you're saying your own – well, go ahead. What are you saying? If that were the case, then so is GreenEdge, because GreenEdge had claims pending against rubber mulch in which it never – it didn't finish prosecuting them. It didn't get a judgment. They were simply dismissed, as were rubber mulch's claims. Rubber mulch had a certain number of claims remaining, as did rubber – I'm sorry. GreenEdge had certain claims remaining from their amended complaint, and rubber mulch had certain counterclaims that were never decided by the court other than a kind of omnibus order that said all claims are now dismissed. All right. Thank you, Mr. Foster.